UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Vilder Gomez-Gomez, <br><br>           Petitioner, <br><br> v. <br><br> Markwayne Mullin, in his Official Capacity, Secretary of the U.S. Department of Homeland Security; <br><br> Todd Blanche, in his Official Capacity, Attorney General of the United States; <br><br> Kenneth Genalo, in his Official Capacity as New York Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; <br><br> Heriberto Tellez, is his official capacity as Warden of Metropolitan Detention Center (MDC), Brooklyn, Federal Department of Corrections, <br><br>           Respondents. | Case No.       (To be Assigned) <br><br> Judge: Hon. <br> _____ <br><br> Magistrate Judge: <br> _____ <br><br> No request for jury trial <br><br><br> **PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

**COMES NOW**, Petitioner, Vilder Gomez-Gomez, brings this Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; the Immigration and Nationality Act, ("INA") and regulations thereunder; the Administrative Procedure Act; and the Suspension Clause of the Constitution, U.S. Const. Art. I § 9, cl. 2. The efforts to remove Petitioner constitute a "severe restraint" on his individual liberty such that Petitioner is "in custody" of the Respondents in violation of the . . . laws of the United States. *Hensley v. Municipal Court,* 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241, including the Immigration Nationality Act, 8 U.S.C. § 1101 et seq.;

1

the Administrative Procedure Act, 5 U.S.C. § 701 et seq,; and the Due Process Clause of the Fifth Amendment of the United States Constitution.

1. Petitioner has been physically detained by U.S. Immigration and Customs Enforcement ("ICE") since February 19, 2026, and is currently in removal proceedings before the Immigration Court. *See* **Exhibit "A."** This has been a direct consequence of having been unlawfully arrested and detained by the ICE. Petitioner has not been afforded any opportunity to seek release on bond or to obtain an individualized custody determination.

2. Pursuant to this Court's inherent authority under 28 U.S.C. § 2241, Petitioner respectfully requests that this Court enjoin Respondents from continuing to detain him and order his immediate release from custody; or in the alternative, Order the Respondents to provide the Petitioner a constitutionally adequate opportunity for an individualized custody hearing before a neutral decisionmaker.

3. Petitioner has now been subjected to prolonged civil immigration detention far exceeding the brief and limited period constitutionally permitted to facilitate removal. See *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *Demore v. Kim*, 538 U.S. 510, 530 (2003). His detention serves any legitimate governmental purpose and has become arbitrary, punitive, and excessive in relation to its stated goals, in violation of the Due Process Clause of the Fifth Amendment.

4. Because the Immigration Court lacks jurisdiction to review or redetermine Petitioner's custody under the current statutory and regulatory framework, Petitioner is left without any adequate or available administrative remedy. Only this Honorable Court possesses jurisdiction under 28 U.S.C. § 2241 to review the legality of his continued detention and to grant

2

appropriate relief. See *INS v. St. Cyr*, 533 U.S. 289, 314 (2001) (recognizing federal habeas jurisdiction where no other judicial forum is available to test the legality of executive detention).

5.      Petitioner has significant and meritorious forms of relief pending before the Immigration Court and U.S. Citizenship and Immigration Services ("USCIS"). He has an approved Special Immigrant Juvenile Status ("SIJ") petition and has already filed an application for adjustment of status to lawful permanent residence. *See* **Exhibits "B" and "C."** His priority date is current; his Final Action Date is less than two weeks away. *See* **Exhibit "D."** Petitioner must remain in the United States to pursue adjudication of his SIJS-based adjustment application and to continue supporting his U.S. citizen child.

6.      Because no administrative body has jurisdiction to review Petitioner's custody, and because his detention violates the Constitution and federal law, habeas corpus is the only mechanism available to safeguard his liberty and ensure meaningful judicial review. Accordingly, this Court should exercise its jurisdiction under 28 U.S.C. § 2241 and grant the relief requested. Immigration Judges increasingly respond to Federal Judges' Orders to hold bond hearing by variously (1) denying bond based upon exaggerated or imaginary concerns over flights risk, or (2) imposing bond as high as $40,000, an oppressive sum rendering ICE detention centers debtors' prisons. Therefore, the only adequate remedy is an Order for IMMEDIATE RELEASE.

## I.   PARTIES

7.      Petitioner, Vilder Gomez-Gomez, is a 24-year-old native and citizen of Guatemala who entered the United States in June 2018 and has resided in Stamford, Connecticut, since his arrival. He is currently detained at Metropolitan Detention Center, Brooklyn (MDC Brooklyn), located at 80 29th St, Brooklyn, NY 11232. *See* **Exhibit "E."** Petitioner is the father of one child, a United States citizen, and is the primary source of emotional and financial support

3

for his family. *See* **Exhibit "F."** He has an approved Special Immigrant Juvenile Status (SIJ) petition and has already filed an application for adjustment of status to lawful permanent residence. His continued detention prevents him from pursuing these forms of humanitarian relief and from caring for his children. Moreover, Petitioner's previous removal proceedings were closed in 2022 precisely to allow Petitioner to adjust status pursuant to his approved SIJ. *See* **Exhibit "G."**

8. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security ("DHS"), the federal agency responsible for enforcing Petitioner's arrest, detention, and removal. Respondent Mullin is sued in his official capacity. His official address is 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-0485.

9. Respondent Todd Blanche is named in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review pursuant to section 103(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1103(g). He routinely transacts business in the Southern District of New York and is legally responsible for the standards and procedures governing Petitioner's removal proceedings. Respondent Blanche's official address is U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530.

10. Respondent Kenneth Genalo is the New York Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement ("ICE"). He is the local ICE official with immediate authority over Petitioner's detention and removal. Respondent Genalo is sued in his official capacity. His office is located at 26 Federal Plaza, 9th Floor, Suite 9-110, New York, NY 10278.

11.    Respondent Heriberto Tellez is the Warden of Metropolitan Detention Center (MDC), Brooklyn, Federal Department of Corrections, where Petitioner is currently detained. As the immediate physical custodian of Petitioner, he is sued in his official capacity.

## II.  JURISDICTION & VENUE

12.    The Court has jurisdiction under the Suspension Clause. The Suspension Clause provides, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I § 9, cl. 2. This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. §§ 2241 *et seq.*, as protected under Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause), and federal question jurisdiction under 28 U.S.C. § 1331. This case arises under the United States Constitution; the INA, 8 U.S.C. §§ 1101 *et seq.*; the APA, 5 U.S.C §§ 701 *et seq.*; the Due Process Clause of the Fifth Amendment and the Fourth Amendment.  Petitioner's current detention as enforced by Respondents constitutes a "severe restraint[] on [Petitioner's] individual liberty," such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." *See Hensley,* 411 U.S. at 351 (1973); 28 U.S.C. § 2241(c)(3). Petitioner is also subject to prolonged physical detention.

13.    While the courts of appeals have jurisdiction to review removal orders directly through petitions for review, *see* 8 U.S.C. § 1252, federal district courts have jurisdiction under 28 U.S.C. § 2241(d) to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of Respondents' conduct.  See *Demore v. Kim*, 538 U.S. 510, 516–517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). No Supreme Court or Second Circuit precedent applicable to immigration detainees, nor the habeas statute, indicate that venue is not proper in the Southern District Court of New York.  *See* 28 U.S.C. § 2241. Venue is proper in the United States District Court for the Southern District of New York because a substantial part of the

5

events and omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b)(2). Petitioner is currently being held at the MDC Brooklyn, located at 80 29th St, Brooklyn, NY 11232.

### III.  FACTS GIVING RISE TO THE HABEAS PETITION

14.     Petitioner, Vilder Gomez-Gomez, is currently in removal proceedings before Immigration Judge Charles Conroy at the New York Immigration Court. A Notice to Appear initiating these proceedings was issued on June 16, 2018, charging Petitioner under INA § 212(a)(6)(A)(i) as an individual present in the United States without being admitted or paroledThe NTA classifies Petitioner as an "alien present in the United States who has not been admitted or paroled," not as an arriving alien. *See* **Exhibit "H".** Petitioner's case was administratively closed in 2022. *See above* **Exhibit "G."** After Petitioner's February 2026 detention, the matter was recalendared. *See* **Exhibit "I."** Petitioner is scheduled to appear for a final Master hearing on April 27, 2026, at 9:30 a.m.

15.     Petitioner is a native and citizen of Guatemala who entered the United States in June 2018 and has resided continuously in Stamford, Connecticut, since his arrival. He is the father of a United States citizen child, and is the primary source of emotional and financial support for his family. Petitioner has an approved SIJ petition and has already filed an application for adjustment of status to lawful permanent residence, which remains pending before U.S. Citizenship and Immigration Services ("USCIS").

16.     The charges in the NTA reflect DHS's determination that Petitioner entered without inspection and is therefore subject to removal proceedings under INA § 240. The NTA does not classify him as an "arriving alien," but rather as an individual present in the United States without lawful admission, placing him squarely within the jurisdiction of the Immigration Court for full removal proceedings.

17.     Petitioner has demonstrated full compliance with immigration processes and has pursued all available forms of relief in good faith. His pending SIJ-based adjustment application, along with his longstanding residence in Connecticut and his role as a caregiver and financial supporter to his child, underscores his eligibility for humanitarian and discretionary relief under U.S. immigration law.

18.     On February 19, 2026, Petitioner was detained by ICE during a work break. He was subsequently transferred to MDC Brooklyn, where he remains in custody. Petitioner filed a motion for custody redetermination, which was denied based upon lack of jurisdiction due to *Matter of Yajure Hurtado*. *See* **Exhibit "J."** Under the current statutory and regulatory framework, the Immigration Court lacks jurisdiction to review or redetermine custody for individuals charged under certain provisions of the INA, leaving Petitioner without any administrative mechanism to challenge his detention.

19.     Petitioner remains in ICE custody despite having significant equities, strong community ties, and meritorious pending applications for relief. His continued detention imposes severe hardship on his U.S. citizen child and his family, disrupts his ability to pursue his SIJS-based adjustment application, and violates his constitutional rights. His detention is arbitrary, punitive, and excessive in relation to its stated purpose.

## IV.     REQUIREMENTS OF 28 U.S.C. § 2243

20.     The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*.

21.     Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), *overruled by Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), and *abrogated by Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.,* 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## V.     APPLICABLE LAW

**A. The Government Is Detaining Petitioner Under the Wrong Statutory Provision and Lacks Authority to Hold Him Under 8 U.S.C. § 1225(b)(2)(A).**

22.     The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.  First, 8 U.S.C. § 1226 governs the arrest and detention of individuals placed in ordinary removal proceedings before an IJ pursuant to 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are subject to discretionary civil detention and are generally entitled to a bond hearing, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, provided they cannot show an exception. *See* 8 U.S.C. § 1226(c).

23.     Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2). Third, 8 U.S.C. § 1231(a)-(b) governs detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)-(b).

24.     This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

25.     The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. § 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

26.     Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323.

27.     Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

28.     On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

29.     The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without

inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

30.    On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings. However, *Matter of Yajure Hurtado* does not hold that Immigration Judges lack bond jurisdiction under § 236(a)(1) as a general matter; rather, it reclassifies all individuals who entered without inspection as "applicants for admission" and places them within § 235(b)(2)'s mandatory detention scheme, which contains no bond authority. Because the Board treats such individuals as falling under § 235(b)(2), it concludes they cannot seek bond, since the section itself provides no mechanism for bond hearings.

31.    Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

32.    Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

33.     Subsequently, court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. *See, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not §

11

1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

34.     In addition to the many courts nationwide that have rejected DHS's and EOIR's new theory of retroactively treating long-term residents as "arriving aliens," courts within the Second Circuit, including the Southern District of New York, have reached the same conclusion. Most notably, in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), the Second Circuit confirmed that individuals arrested in the interior after having lived in the United States for years are detained under 8 U.S.C. § 1226(a), not § 1225(b), and are entitled to individualized custody determinations with the government bearing the burden of justifying continued detention. Numerous SDNY decisions applying *Velasco Lopez* reaffirm that DHS cannot reclassify long-term residents as "arriving aliens" for purposes of mandatory detention. See, e.g., *Sajous v. Decker*, 2018 WL 2357266, at *6–7 (S.D.N.Y. May 23, 2018)* (finding § 1226(a) governs where noncitizen was arrested in the interior years after entry); *Rosales-Garcia v. Decker*, 2019 WL 1227848 (S.D.N.Y. Mar. 15, 2019) (rejecting government attempt to impose § 1225(b) mandatory detention on a long-term resident apprehended in the interior); *Hernandez v. Decker*, 2018 WL 3579108 (S.D.N.Y. July 25, 2018) (same). Courts throughout this Circuit consistently recognize that noncitizens physically present in the United States, even if originally admitted without inspection, cannot be retroactively converted into "arriving aliens" to trigger § 1225(b)(2)(A). See also *Perez v. Decker*, 2018 WL 3991497 (S.D.N.Y. Aug. 20, 2018); *Almonte v. Decker*, 2018 WL 3609839 (S.D.N.Y. July 27, 2018). Accordingly, both the statutory text and binding Second Circuit authority demonstrate that Petitioner is properly detained, if at all, under § 1226(a), and DHS cannot lawfully apply § 1225(b)(2)(A) to an individual who entered years

ago and was apprehended inside the United States. Because DHS initially and improperly classified Petitioner under §1226, it cannot now retroactively reclassify him under § 1225(b)(2)(A) to cure that jurisdictional defect; accordingly, his present detention is unlawful and he must be released immediately.

35.    Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

36.    Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a [noncitizen]."

37.    The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)); *see also Gomes*, 2025 WL 1869299, at *7.

38.    Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

39.    By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at

the border of people who are "seeking admission" to the United States. 8 U.S.C. §1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

40.    Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

**B. Petitioner's Continued Detention Violates the Fifth Amendment's Due Process Clause**

41.    The Due Process Clause applies to all persons in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. at 693; *see also Yick Wo v. Hopkins*, 118 U.S. 356 (1886). The Supreme Court declared "that the Due Process Clause protects individuals against two types of government action" giving rise to distinct claims of substantive and procedural due process violations. *United States v. Salerno,* 481 U.S. 739, 746 (1987). Thus, "the touchstone of due process is protection of the individual against arbitrary action of government … whether the fault lies in the denial of fundamental due process fairness [procedural due process] … or in the exercise of power without any reasonable justification in the service of a legitimate government objective [substantive due process]…" *City of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citations and internal quotations omitted).

42.    Procedural due process constrains governmental decisions that deprive individuals of property or liberty interests within the meaning of the Due Process Clause of the Fifth Amendment.  *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Perry v.*

*Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest). Infringing upon a protected interest triggers a right to a hearing before that right is deprived, and a right to meaningful process afforded at a meaningful time. See *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). "'Substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,'… or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746. (internal citations omitted).

43.     Respondents' power to detain and deport someone is not limitless, nor is it shielded from judicial review.  See *Calderon v. Sessions,* 330 F. Supp. 3d 944, 950 (S.D.N.Y. 2018)  *appeal withdrawn sub nom. Villavicencio Calderon v. Sessions*, No. 18-2926, 2018 WL 6920377 (2d Cir. Oct. 5, 2018) (ordering a stay of removal and release from detention to permit the Petitioner to continue with the provisional waiver process afforded by the government); *You Xiu Qing v. Nielsen*, 321 F.Supp.3d 451 (S.D.N.Y. 2018) (ordering a stay of removal and release from detention to permit the Petitioner to continue with the provisional waiver process and a motion to reopen);  *S.N.C. v. Sessions,* No. 18 2018 WL 6175902, (S.D.N.Y. Nov. 26, 2018); *Compere v. Nielsen*, 2019 WL 332193, at *9 (D.N.H. Jan. 24, 2019) (granting a stay of removal for petitioner because deportation to Haiti would vitiate his ability to pursue an appeal to the BIA of the IJ's denial for a motion to reopen); *Lin v. Nielsen*, 2019 WL 1958569 at *15 (D. Md. May 2, 2019) (court found that a preliminary injunction was "in the public interest, as it requires DHS to comport with its own rules and regulations, and bars arbitrary and capricious action towards vulnerable undocumented immigrants."); *see also Martinez v. Neilsen*, 341 F.Supp.3d 400 (D.N.J. Sept. 14, 2018); *Fatty v. Nielsen*, 2018 WL 3491278 at *2 (W.D. Wash. Jul. 20, 2018); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 933-35 (W.D. Tex. 2018); *Jimenez v. Nielsen*,

15

No. CV 18-10225-MLW, 2018 WL 4539687 (D. Mass. Sept. 21, 2018); *Sied v. Nielsen*, 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018); *Ragbir v. Sessions*, 2018 WL 623557 (S.D.N.Y. Jan. 29, 2018); *Ibrahim v. Acosta*, No. 17-CV-24574, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147 (C.D. Cal. 2018); *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017).

44.    "Habeas corpus is at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995).  Judges have "broad discretion" to fashion an appropriate remedy. It may extend beyond simply ordering the release of a petitioner, *Carafas v. La Vallee*, 391 U.S. 234 (1968), and is to "be administered with the initiative and flexibility essential to ensure that miscarriages of justices within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969).  Habeas corpus "never has been a static, narrow, formalistic remedy; its scope has been to achieve its grand purpose - the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).  At its historical core, habeas corpus "has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474 (2004) (citations omitted). These protections extend fully to noncitizens subject to an order of removal. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001); *see also Martinez v, McAleenan*, 385 F.Supp.3d 349, 355 ("Due to its talismanic significance in protecting individual liberty from unlawful detention, habeas corpus is fundamentally governed by equity. The Supreme Court has granted the writ when justice has so required.") (citing *Munaf v. Grren*, 128 S.Ct. 2207 (2008) and *Carafas v. LaVallee*, 392 U.S. 234 (1968)). The Supreme Court has noted the writ's "scope and flexibility--its capacity to reach all manner of illegal detention--its ability to cut through barriers of form and procedural mazes." *Harris*, 394 U.S. at 291.

16

45.    Furthermore, in *Demore,* the Supreme Court held that mandatory detention under § 1226(c) was not unconstitutional on its face, but limited its holding to a brief period of detention, stating "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for *the brief period* necessary for their removal proceedings." 538 U.S. at 513 (emphasis added). The Court described the "brief period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003 "lasts for less than ... 90 days." *Id.* at 529.

46.    Even if the government were correct in placing Petitioner under § 1225(b), *Demore* expressly applies only to § 1226(c) detainees and is limited to brief, finite detention; it does not authorize indefinite, pre-hearing detention of long-term residents arrested years or decades after entry.

47.    In the present case, there is no indication that Petitioner's detention is temporary or limited to a brief period necessary to effectuate removal. To the contrary, Petitioner has been subjected to unlawful and prolonged civil immigration detention that may continue for an indefinite period, potentially extending for many months or longer. Petitioner has actively pursued congressional relief, including an approved Special Immigrant Juvenile Status petition and a pending Application for Adjustment of Status based on that approval. These filings reflect his statutory eligibility for humanitarian protection under the Immigration and Nationality Act and demonstrate his longstanding residence in New York, his deep community ties, and the significant hardship his removal would impose on his two children, including his United States citizen child, who depend on him for stability and support.

C. **Respondents' Conduct Violates the Administrative Procedure Act (5 U.S.C. §§ 701–706).**

48.     Respondents' actions further violate the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, because the decision to detain Petitioner under 8 U.S.C. § 1225(b)(2)(A), despite his undisputed status as an interior resident who has lived in New York since 2019 and who was placed in full removal proceedings under § 240, constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and contrary to law. *See* 5 U.S.C. § 706(2)(A), (C). DHS's effective reclassification of Petitioner as an "arriving alien" for the sole purpose of subjecting him to mandatory detention represents a fundamental departure from decades of consistent agency practice and violates the statutory framework Congress enacted. Such reclassification is not the product of reasoned decision-making, is unsupported by the INA's text, structure, or purpose, and reflects an unexplained and irrational policy shift lacking any contemporaneous justification.

49.     The APA forbids agencies from acting in a manner that is "arbitrary, capricious, [or] an abuse of discretion," particularly where,  as here, an agency's deviation from settled practice imposes severe restraints on liberty. DHS's application of § 1225(b)(2)(A) to Petitioner is arbitrary and contrary to law because that provision governs recent entrants applying for admission at or near the border, not individuals like Petitioner who have lived in the United States for years and are charged with inadmissibility under § 212(a)(6)(A)(i) in full § 240 proceedings. See *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (explaining § 1225(b) applies at ports of entry). Respondents' reclassification policy constitutes final agency action reviewable under the APA because it determines Petitioner's custodial status, imposes

mandatory detention with no administrative process for review, and marks the consummation of the agency's decision-making process as applied to him.

50.    Accordingly, Respondents' detention of Petitioner under § 1225(b)(2)(A) must be set aside under 5 U.S.C. § 706(2) as unlawful agency action taken "in excess of statutory jurisdiction" and "without observance of procedure required by law," and this Court should order his immediate release.

## VI.    CLAIMS FOR RELIEF

### Count I

### Habeas Corpus Under 28 U.S.C. § 2241 (Unlawful Executive Detention)

51.    Petitioner is unlawfully detained in violation of 28 U.S.C. § 2241 because DHS is treating him as if he were subject to 8 U.S.C. § 1225(b)(2)(A), a statutory provision that does not authorize his detention as an interior resident who has lived in New York since 2019 and who has been placed in full removal proceedings under 8 U.S.C. § 1229a. Nothing in the INA permits DHS to reclassify a noncitizen apprehended years after entry as an "arriving alien" for purposes of mandatory detention, and the Government's reliance on § 1225(b)(2)(A) is contrary to the statutory text, structure, and longstanding agency practice. Because Petitioner is properly detained, if at all, under 8 U.S.C. § 1226(a), his continued detention is unauthorized, exceeds DHS's statutory jurisdiction, and is not reasonably related to any legitimate removal purpose, rendering it unconstitutional and unlawful.

### Count II

### Violation of the Fifth Amendment (Substantive and Procedural Due Process)

52.    Respondents' detention of Petitioner violates the Fifth Amendment by subjecting him to prolonged, mandatory, and unreviewable incarceration without any individualized

custody determination. Petitioner has been held since February 19, 2026, without a hearing, without an opportunity to present evidence, and without any process to contest the necessity of his confinement. The absence of any mechanism for review, the government's refusal to consider less restrictive alternatives, and DHS's treatment of Petitioner as if he were subject to § 1225(b)(2)(A), despite his years of residence in Connecticut, his placement in full § 240 removal proceedings, and his eligibility for lawful status, constitute both procedural and substantive due process violations. His detention is arbitrary, excessive in relation to any legitimate governmental purpose, and fundamentally inconsistent with the constitutional protections afforded to all persons within the United States.

## Count III

### Violation of the INA and Administrative Procedure Act (5 U.S.C. §§ 701–706)

53.    Respondents' reliance on 8 U.S.C. § 1225(b)(2)(A) to justify Petitioner's detention constitutes final agency action that is arbitrary, capricious, and contrary to law within the meaning of 5 U.S.C. § 706(2)(A), (C). Petitioner is an interior resident who has lived in New York since 2019, was apprehended years after his entry, and was placed in standard removal proceedings under § 240. Nothing in the INA authorizes DHS to treat such an individual as subject to the mandatory detention framework reserved for recent entrants at or near the border. The agency's decision to apply § 1225(b)(2)(A) in these circumstances departs from longstanding statutory interpretation and established practice, lacks any reasoned explanation, and imposes severe restraints on liberty without legal basis. Because this action exceeds DHS's statutory authority and reflects an impermissible exercise of executive power, it must be set aside under the Administrative Procedure Act.

## Count IV

### Violation of the Suspension Clause (U.S. Const. Art. I § 9, cl. 2)

54.    By depriving Petitioner of any administrative mechanism to challenge his confinement and by foreclosing access to an Immigration Judge for a custody determination, Respondents have effectively suspended the privilege of the writ of habeas corpus as applied to him. DHS's treatment of Petitioner as if he were subject to § 1225(b)(2)(A) eliminates all avenues of review within the immigration system and leaves this Court as the sole forum in which he may contest the legality of his detention. The Suspension Clause prohibits the Government from erecting barriers that prevent individuals from obtaining meaningful judicial review of executive custody, and Respondents' actions violate that constitutional guarantee.

## VII.    REQUEST FOR RELIEF

55.    Pending the adjudication of this Petition, Petitioner respectfully requests that the Court use its authority under 28 U.S.C. § 2243 to order Respondents to file a return within three days, unless they can show good cause for additional time. § 2243 provides that an order to show cause why a writ of habeas corpus should not be granted must be "returned within three days unless for good cause additional time, not exceeding twenty days, is allowed."

56.    Petitioner respectfully requests that Respondents be restrained from removing him from the United States while his removal proceedings remain pending. Premature removal would extinguish his ability to pursue the forms of relief for which he is eligible, including his pending application for adjustment of status based on his approved Special Immigrant Juvenile Status petition, and would irreparably undermine his ability to seek protection under the immigration laws.

57.     Without this Court's intervention, Respondents may seek to remove Petitioner in violation of law and inflict further unnecessary harm. Petitioner therefore requests that the Court order Respondents to provide at least five days' advance notice to the Court and to Petitioner's counsel before executing any removal.

58.     Petitioner further respectfully requests release from immigration detention pending resolution of his proceedings. He has been subjected to unlawful civil detention despite having an approved SIJ petition, a pending adjustment application, longstanding residence in Connecticut, and significant family ties, including a United States citizen child. Continued detention imposes severe hardship and materially interferes with his ability to meaningfully prepare and present his claims for relief.

59.     Because Respondents' actions threaten to remove Petitioner unlawfully and without adequate process, Petitioner requests that the Court require Respondents to notify the Court and Petitioner's counsel at least five days prior to any attempt to remove him from the United States.

## VIII.    <u>EXHAUSTION OF REMEDIES</u>

60.     Petitioner's claims regarding the constitutionally inadequate process and unlawful deprivation of liberty are not subject to any statutory requirement of administrative exhaustion. See *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). To the extent that prudential concerns might lead the Court to consider exhaustion as a discretionary matter, Petitioner has taken all reasonable steps available to him within the administrative framework.

61.     Petitioner is currently in removal proceedings before the Immigration Court and is represented by counsel. He has a scheduled master calendar hearing and intends to proceed on his pending application for adjustment of status based on his approved Special Immigrant

Juvenile Status petition. These remedies remain pending or forthcoming, and no final order of removal has been issued.

62.    Moreover, neither the Immigration Judge nor the Board of Immigration Appeals has jurisdiction to adjudicate the constitutional claims raised in this habeas petition. These claims fall squarely within the purview of this Court.

63.    Finally, Petitioner faces irreparable harm in the form of continued detention and the risk of premature removal before he can pursue the legal remedies available to him. Respondents have the authority to parole Petitioner under 8 C.F.R. §§ 235.3(b)(2)(iii), 1235.3(b)(2)(iii), yet have declined to do so despite his eligibility and humanitarian circumstances. Because the administrative process offers no meaningful opportunity for relief and cannot address the constitutional violations at issue, exhaustion is not required. See *McCarthy*, 503 U.S. at 146–49 (exhaustion excused where administrative remedies are inadequate or futile); *INS v. St. Cyr*, 533 U.S. 289, 314 (2001).

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1.    Assume jurisdiction over this matter.

2.    Issue a writ of habeas corpus on the ground that Petitioner's continued detention violates the Due Process Clause and order his immediate release.

3.    In the alternative, issue injunctive relief directing Respondents to immediately release Petitioner because his continued detention violates the Due Process Clause.

4.    Enjoin Respondents from removing Petitioner from the United States.

5.    Order Respondents to file a return within three days pursuant to 28 U.S.C. § 2243.

6.   Declare that the process applied to Petitioner violates the Suspension Clause, the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the INA, the APA, and federal regulations.

7.   Issue a writ of habeas corpus directing Respondents to pursue a constitutionally adequate process before taking adverse immigration actions against Petitioner.

8.   Order Respondents to provide at least five days' advance notice to the Court and to Petitioner's counsel before executing any removal.

9.   Order Respondents to comply with all applicable rules, regulations, laws, and constitutional protections in relation to Petitioner's pending removal proceedings and his application for adjustment of status based on his approved Special Immigrant Juvenile Status petition.

10.  Award Petitioner his costs and reasonable attorney's fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable statutes.

11.  Grant such further relief as the Court deems just and proper.

Dated: April 26, 2026

Respectfully submitted,

By: /s/ Andrea C. Soto
    Andrea C. Soto, Esq.
    Attorney for Petitioner
    Soto Law, PLLC
    445 Hamilton Avenue, Suite 407
    T : 914-290-4900 / F: 914-898-9100
    asoto@andreasotolaw.com

By: /s/ Eric Rosenfeld

Eric Rosenfeld, Esq.
Attorney for Petitioner
R&G Legal Solutions
3662 N 21st Street
Philadelphia, PA
215-779-6443
eric@rglegalsolutions.com
Pro Hac Vice Application Forthcoming *

25